# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

| | | |
|---|---|---|
| **RICHARD STOLTE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CAUSE NO. 1:10-CV-00087** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Plaintiff Richard Stolte appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for a period of disability and Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI").[1] (*See* Docket # 1.) For the following reasons, the Commissioner's decision will be AFFIRMED.

## I.  PROCEDURAL HISTORY

Stolte applied for DIB and SSI on April 5, 2006, alleging that he became disabled as of June 3, 2005. (Tr. 94-96, 363-66.) The Commissioner denied his application initially and upon reconsideration, and Stolte requested an administrative hearing. (Tr. 55-56, 66-71, 77-80, 359-62.) A hearing was conducted by Administrative Law Judge ("ALJ") John Pope on July 22, 2008, at which Stolte (who was represented by counsel), his wife, and a vocational expert ("VE") testified. (Tr. 437-90.)

---

[1] All parties have consented to the Magistrate Judge. *See* 28 U.S.C. § 636(c).

On January 16, 2009, the ALJ rendered an unfavorable decision to Stolte, concluding that he was not disabled because he could perform a significant number of jobs in the economy despite the limitations caused by his impairments. (Tr. 15-27.) The Appeals Council denied Stolte's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 4-11.) Stolte filed a complaint with this Court on March 26, 2010, seeking relief from the Commissioner's final decision. (Docket # 1.)

## II. STOLTE'S ARGUMENTS

Stolte alleges three flaws with the Commissioner's final decision. Specifically, Stolte claims that the ALJ (1) improperly discounted the credibility of his symptom testimony; (2) improperly evaluated the opinion of Dr. Michael Klele, a family practitioner; and (3) erred at Step 5 in finding that he could perform other work. (Opening Br. of Pl. in Social Security Appeal Pursuant to L.R. 7.3 ("Opening Br.") 14-22.)

## III. FACTUAL BACKGROUND[2]

### A. Background

At the time of the ALJ's decision, Stolte was forty years old, had a high school education, and possessed past relevant work experience as a painter. (Tr. 115, 363, 487.) Stolte alleges that he became disabled as of June 3, 2005, due to neck pain, mild degenerative changes in the cervical spine, cervicogenic headaches, left wrist surgery in 2006, bilateral shoulder impingement, osteoarthritis in the right wrist, post-proximal row carpectomy in 1993, and depression.

---

[2] In the interest of brevity, this Opinion recounts only the portions of the 490-page administrative record necessary to the decision.

## B. Stolte's Testimony at the Hearing

At the hearing, Stolte testified that he lives with his wife and two children, ages 15 and 13, in a one-story home. (Tr. 441-42, 458.)  His wife is home with him during the day, and she prepares the meals and does the laundry, shopping, and most household chores. (Tr. 458, 460-61.)  In a typical day, he gets up, eats and takes his medications, and then takes a long hot shower to help ease his discomfort. (Tr. 455.)  His wife helps him wash his back, chest, and arms. (Tr. 459.)  He can dress himself except that he needs help putting on a shirt. (Tr. 459.)  This routine takes him approximately two-and-one-half hours. (Tr. 456.)  Then, because he is exhausted, he sits on the couch most of the day, sometimes watching television, and intermittently lies down on his bed. (Tr. 456-57.)  He tries to walk outside but only makes it about one-half of a block before he needs to lie down because of the pain. (Tr. 456.)  He enjoys painting model cars in his spare time. (Tr. 461.)  He drives a car, but has some difficulty pushing the pedals and turning the steering wheel, and thus prefers that his wife or daughter drive. (Tr. 471.)

Stolte stated that as a result of injuries he sustained in a motor vehicle accident on June 3, 2005, he could no longer work as a self-employed painter because he could not lift the ladder, carry buckets, or use the spray gun. (Tr. 156, 445.)  He also could not work his part-time job as a pizza delivery person because he could not lift and carry pizzas. (Tr. 445.)  In fact, he testified that he can only lift about two pounds because he cannot "take the pressure in [his] hands and [his] back." (Tr. 447, 467.)  He stated that his condition affects his ability to sit, stand, walk, lift, and carry in that he gets cramps when he sits for a while and gets dizzy if he stands too long. (Tr. 447-48.)  He reported that he could walk for fifteen minutes, stand for ten minutes, and sit for

twenty minutes. (Tr. 468-70.)  He frequently needs to alternate between sitting and standing. (Tr. 470.)

Stolte reported that he experiences chronic pain, both dull and sharp, in his neck, back, shoulders, wrists, and knees, and that it worsens with activity. (Tr. 464-67.)  He has difficulty holding items in his hands and gets a "stabbing pain" in his neck when he tries to lift anything. (Tr. 465-68, 475.)  He takes medications to reduce his pain to a "bearable" level, as otherwise he "wake[s] up in tears" and "can't take it". (Tr. 453.)  He reported side effects of constant dry mouth, increased need to sleep, and forgetfulness. (Tr. 453-54.)  He also uses heat and cold to help control his pain. (Tr. 467.)

As to his mental status, Stolte testified that he feels depressed because of his limitations. (Tr. 462.)  He takes medication for depression but does not participate in counseling due to financial limitations. (Tr. 462.)  Stolte elaborated that he stays to himself, perceiving that people frequently get aggravated with him, and that he does not belong to any social organizations or spend time with family or friends. (Tr. 463.)  He also complains that he has difficulty maintaining concentration.[3] (Tr. 464.)

## C.  Summary of the Relevant Medical Evidence

Stolte was in a motor vehicle accident on June 3, 2005, while working as a pizza delivery person, in which he sustained injuries to his neck and left forearm. (Tr. 21, 156.)  Specifically, he had an abrasion and tenderness of his left forearm and mild discomfort of his left shoulder. (Tr. 156-57.)  A physical examination at the emergency room was otherwise unremarkable, noting negative x-rays and "excellent" motor and sensory function. (Tr. 156-57.)

---

[3] Stolte's wife also testified at the hearing, essentially corroborating Stolte's testimony. (Tr. 481-85.)

A few days later, Stolte visited Dr. David Paul J. Almdale at Fort Wayne Orthopaedics for follow-up, complaining of some soft tissue and muscular neck and back pain. (Tr. 300-01.) On examination, his range of motion was normal except for a slight decrease in his wrists bilaterally and some pain in his forearm. (Tr. 300.) Dr. Almdale thought that he could return to work in a few weeks. (Tr. 301.)

Stolte, however, did not improve, and thus one month later he visited Dr. Dan Wilcox at Fort Wayne Orthopaedics for further evaluation. (Tr. 290-91.) He complained of pain in his back, shoulders, and neck; tingling in his left hand; difficulty grasping items; and that Ibuprofen, Flexeril, and Darvocet were not helping. (Tr. 290-91.) Dr. Wilcox prescribed Vicoden. (Tr. 290-91.) On examination, he complained of increased pain upon rotation. (Tr. 290-91.) He exhibited mild swelling in his left forearm, which was painful to palpation. (Tr. 290-91.) Dr. Wilcox diagnosed Stolte with whiplash syndrome and neck pain, and recommended physical therapy. (Tr. 290-91.)

One month later, Dr. Wilcox noted that Stolte was improving but that he had decreased strength in his wrist and some pain. (Tr. 288-89.) His neck range of motion had increased, though he still experienced neck symptoms. (Tr. 288-89.) Physical therapy was continued. (Tr. 288-89.)

Stolte saw Dr. Wilcox again on August 31, 2005. (Tr. 286-87.) The physical therapist reported that Stolte had met some of his range of motion and strength goals, though he had not improved as much as hoped. (Tr. 163, 286.) The therapist also noted that Stolte demonstrated some inconsistent movement and strength patterns, and thus the therapist suspected pain symptom magnification. (Tr. 286.) Stolte's wrist problem, however, had improved. (Tr. 286.)

On examination, Stolte demonstrated pain with palpation over the C4-5 and C5-6 joint and a slight decrease in left rotation; otherwise, the exam was normal. (Tr. 286.)

In September, an MRI of the spine showed some mild degenerative, but no traumatic, changes. (Tr. 284.)  Stolte's left wrist was injected, which caused some improvement, but he still had some burning pain in one area. (Tr. 283.)  Dr. Wilcox stated they could continue conservative care or do a medial branch nerve block at C4-5. (Tr. 283.)  Over the next two months, Dr. Wilcox performed two nerve blocks for Stolte's neck pain. (Tr. 274-77, 280-82.)

On November 4, 2005, Stolte saw Dr. F. Theodore Chaykowski at Fort Wayne Orthopaedics for an assessment of his left wrist, complaining of pain upon use but not upon rest. (Tr. 278.)  His wrist range of motion was within normal limits, but he had some tenderness of his extensor tendons. (Tr. 278.)  An MRI was normal. (Tr. 272.)  Dr. Chaykowski thought that Stolte's work with a paint spray gun was contributing to his persistent problems; he had nothing else to suggest to Stolte. (Tr. 272.)

Stolte returned to Dr. Almdale on November 23, 2005, and after an examination, Dr. Almdale told him that he did not have anything that could guarantee results given the absence of a definable lesion. (Tr. 271.)  He suggested Stolte consider another injection or surgical exploration. (Tr. 271.)

Stolte saw Dr. Wilcox a week later. (Tr. 270.)  Upon exam, Stolte had pain only upon left rotation. (Tr. 270.)  He was taking Vicodin for his wrist. (Tr. 270.)  In December, Dr. Wilcox performed additional nerve blocks, which significantly helped Stolte at first. (Tr. 264, 267-69.) However, two weeks later he told Dr. Almdale that the nerve blocks were not providing much benefit. (Tr. 264.)  Dr. Almdale told Stolte to consider a change of occupation. (Tr. 264.)

On January 5, 2006, Dr. Almdale performed a debridement, extensor tenosynovectomy, and release of left extensor carpi radialis longus and extensor pollicis longus. (Tr. 260.)  Stolte told Dr. Almdale at the end of January that he was pleased with the results of the surgery. (Tr. 220.)  He had thirty pounds of grip strength on the left and ninety-eight pounds on the right. (Tr. 220.)  The next month, Dr. Wilcox administered another cervical nerve block. (Tr. 216.)

On February 17, 2006, Stolte returned to Dr. Almdale. (Tr. 213.)  His left grip strength had increased to sixty pounds. (Tr. 213.)  Dr. Almdale instructed Stolte to gradually increase his activity level. (Tr. 213.)

In early March, Dr. Wilcox told Stolte that his pain was likely discogenic in nature, and that he could not recommend any treatment for it. (Tr. 210.)  Dr. Wilcox emphasized, however, that Stolte's pain was eighty percent better than prior to treatment. (Tr. 210.)

On March 23, 2006, Stolte underwent a functional capacity evaluation ("FCE") upon referral by Dr. Almdale. (Tr. 206-07.)  The evaluation indicated the following lifting and carrying limitations:

|  | Occasional | Frequent |
|---|---|---|
| Floor lift | 20 lbs. | 10 lbs. |
| Shoulder lift | 15 lbs. | 0 lbs. |
| Overhead lift | 5 lbs. | 0 lbs. |
| 30 feet | 15 lbs. | 10 lbs. |
| Push 30 feet | 30 lbs. | 15 lbs. |
| Pull 30 feet | 20 lbs. | 10 lbs. |
| Right arm carry | 10 lbs. | 5 lbs. |
| Left arm carry | 5 lbs. | 0 lbs. |
| Horizontal waist lift | 20 lbs. | 10 lbs. |

(Tr. 197.)  Results for the non-material handling tasks indicated the following restrictions: simple grasp, frequent bilaterally; reaching, frequent below shoulder height and occasional to

shoulder height and overhead bilaterally; arm controls, frequent below shoulder height and occasional to shoulder height and overhead bilaterally; infrequent crawling; and occasional repetitive use of left wrist. (Tr. 197.)  No restrictions were indicated in walking, standing, sitting, squatting, kneeling, bending, twisting, assembly work, leg controls, climbing, balancing, or repetitive use of elbow or right wrist. (Tr. 197.)  On March 31, 2006, Dr. Almdale noted the results of the FCE indicated that Stolte could perform sedentary to light work but no production-oriented work or operating heavy machinery. (Tr. 243.)

In early April, Stolte returned to Dr. Wilcox, reporting pain in his neck, thoracic spine, and low back. (Tr. 239-40.)  Dr. Wilcox noted that Stolte's back pain was "new". (Tr. 239-40.)  Dr. Wilcox told Stolte that he did not know why he continued to have neck pain, but that it could be discogenic pain. (Tr. 239-40.)  One month later, Stolte reported that the nerve block benefits were not lasting. (Tr. 235.)  Dr. Wilcox referred Stolte to Dr. David Stensland. (Tr. 235.)

On May 25, 2006, Dr. Lavonne Bastnagel, a state agency physician, reviewed Stolte's record and concluded that he was able to perform light exertional work with the following non-exertional limitations: frequent climbing of ramps or stairs, balancing, stooping, kneeling, crouching, and crawling; never climbing ladders, ropes, or scaffolds; and only occasional overhead reaching. (Tr. 166-73.)

On May 31, 2006, Stolte was examined by Dr. Stensland of Fort Wayne Orthopaedics. (Tr. 232.)  Physical examination of the cervical spine showed some tenderness on the right, greater than left. (Tr. 231.)  He recommended that Stolte undergo a diagnostic nerve block, which he did. (Tr. 225, 230.)  He thought that Stolte may have some residual intrascapular soft tissue pain from his car accident, which should continue to be treated conservatively. (Tr. 230.)

In July 2006, Stolte lacerated his left long finger while using a knife to prepare food. (Tr. 174.) Dr. Gerald Cooper surgically repaired his flexor tendon. (Tr. 174-76, 180.)

That same month, Stolte saw Dr. Robert Shugart of Fort Wayne Orthopaedics for a consultation on his neck pain. (Tr. 183.) He ordered a discogram. (Tr. 183.)

On August 15, 2006, Dr. Almdale saw Stolte for a permanent impairment evaluation. (Tr. 178.) He opined that Stolte had a fifty percent impairment of the upper extremity. (Tr. 178.)

In December 2006, Stolte and his attorney visited Dr. Wilcox for follow-up on his neck pain and an evaluation for his Medicaid disability application. (Tr. 319-20.) Dr. Wilcox, however, stated that he does not do disability evaluations. (Tr. 319-20.) He reported that he had done all he could for Stolte and recommended that Stolte not undergo additional nerve blocks since the last one actually flared his symptoms. (Tr. 319-20.) He recommended that Stolte continue on with Dr. Shugart and the cervical discography. (Tr. 319-20.)

Two days later, Stolte visited Dr. Almdale regarding some vague symptomology in his left wrist. (Tr. 317.) Dr. Almdale diagnosed moderate osteoarthritis right wrist status post proximal row carpectomy. (Tr. 318.) Dr. Almdale proposed a surgical wrist fusion or a steroid injection. (Tr. 318.) Stolte did not want any further surgery, and thus Dr. Almdale administered the injection. (Tr. 318.) Stolte returned the next month reporting no improvement. (Tr. 314.) Dr. Almdale gave him a wrist splint and released him from his care. (Tr. 314.)

On April 18, 2007, Stolte visited Dr. Wilcox, complaining of headaches on the left side. (Tr. 310-11.) Dr. Wilcox noted that Stolte's headaches had originally been on the right side. (Tr. 310-11.) Stolte's hand grip was "four" out of "five" bilaterally, and forward flexion of his neck increased his pain. (Tr. 310-11.) Stolte returned to Dr. Wilcox four months later, on August 6,

2007. (Tr. 306.)  On examination, he had increased impingement signs, and Dr. Wilcox continued his medications. (Tr. 306.)

In September 2007, Stolte saw Dr. David Coats at the St. Joe Orthopaedic Clinic upon referral by Dr. Wilcox. (Tr. 345.)  Stolte described his pain as a "seven" on a scale of "one" to "ten", and complained that he could not extend his arms above his head. (Tr. 345.)  On examination, his right shoulder abduction was 95 degrees active and 110 degrees passive; left shoulder abduction was 85 degrees active and 110 degrees passive. (Tr. 345.)  External rotation was 60 degrees on the right and 45 degrees on the left. (Tr. 345.)  He had some tenderness to palpitation to the left pectoralis major tendon. (Tr. 345.)  His strength was normal. (Tr. 345-46.) The results of bilateral shoulder x-rays were normal. (Tr. 346.)  Dr. Coats diagnosed Stolte with bilateral shoulder impingement syndrome and left pectoralis major inflammation. (Tr. 346.) Dr. Coats injected both shoulders and recommended physical therapy. (Tr. 346.)

One month later, Stolte returned to Dr. Coats, reporting that his physical therapy was progressing well. (Tr. 340.)  His pain was greatly diminished, and his range of motion had greatly improved. (Tr. 340.)  Dr. Coats recommended a home exercise program. (Tr. 340.)  The next month, however, Stolte reported some increased pain in his left shoulder. (Tr. 336.)  His forward flexion on the left was 90 degrees active and 145 degrees passive, with pain, and on the right was 95 degrees active and 150 passive, with pain. (Tr. 336.)  Dr. Coats diagnosed him with bilateral shoulder pain/impingement, left greater than right. (Tr. 336.)  An MRI of his shoulders showed some intrasubstance edema of the distal supraspinatous tendon with no obvious supraspinatous tear; there were no significant arthritic changes. (Tr. 336.)  Dr. Coats administered another injection and explained that if it did not significantly improve him, a

shoulder arthroscopy with subacromial decompression and rotator cuff evaluation may be indicated. (Tr. 331-32.)

In January 2008, Stolte reported to Dr. Jason Hanna at the St. Joseph Orthopaedic Clinic that after one to three weeks of pain relief, his shoulder had worsened. (Tr. 326.)  Dr. Hanna found some decreased range of motion in both shoulders with a fair amount of pain and impingement symptoms. (Tr. 326.)  Dr. Hanna gave Stolte another injection, and they discussed the surgery recommended by Dr. Coats. (Tr. 326.)  Stolte elected to proceed with the surgery. (Tr. 326.)

On July 10, 2008, Dr. Michael Klele, a family practitioner, provided a medical source statement, reporting that he had been treating Stolte for four months. (Tr. 353, 448.)  He stated that Stolte's prognosis was poor, listing his symptoms as severe neck pain on flexion and extension. (Tr. 353.)  His clinical findings were severely limited range of motion and strength. (Tr. 353.)  He opined that Stolte could only work part-time and that he would be absent from work more than four days per month. (Tr. 356-57.)

## IV.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted).  The decision will be reversed only if it is not supported by

substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

## V. ANALYSIS

### A. The Law

Under the Act, a claimant is entitled to DIB or SSI if he establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform his past work; and (5)

whether the claimant is incapable of performing work in the national economy. *See* 20 C.F.R. §§ 404.1520, 416.920; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

### B. The ALJ's Decision

On January 16, 2009, the ALJ rendered his decision. (Tr. 15-27.) He found at step one of the five-step analysis that Stolte had not engaged in substantial gainful activity since his alleged onset date. (Tr. 17.) At step two, the ALJ concluded that Stolte had the following severe impairments: degenerative disk disease, arthritis, and chronic pain. (Tr. 17.)

At step three, the ALJ determined that Stolte's impairment or combination of impairments were not severe enough to meet a listing. (Tr. 17.) Before proceeding to step four, the ALJ determined that Stolte's testimony of debilitating limitations was not credible and that he had the following RFC:

> [T]he claimant has the residual functional capacity to perform sedentary work . . . except as reduced by: lifting/carrying no more than 15 pounds occasionally and 7 pounds frequently; standing/walking/sitting of least 6 hours each in an 8 hour day; frequent grasping bilaterally; frequent reaching below shoulder height and frequent use of arm controls below shoulder height; infrequent crawling; occasional reaching bilaterally and occasional use of arm controls to shoulder height with occasional overhead use bilaterally; occasional repetitive use of the left wrist; and no production-oriented work.

(Tr. 18.)

Based on this RFC and the VE's testimony, the ALJ concluded at step four that Stolte

13

was unable to perform his past relevant work as a painter. (Tr. 26.) The ALJ then concluded at step five that Stolte could perform a significant number of unskilled, sedentary jobs within the economy, including telephone clerk (250 jobs), surveillance systems monitor (300 jobs), and order clerk (300 jobs). Therefore, Stolte's claims for DIB and SSI were denied. (Tr. 27.)

## C. The ALJ's Credibility Determination Will Not Be Disturbed

Stolte first contends that the ALJ improperly discounted the credibility of his testimony of debilitating limitations. The ALJ's credibility determination, however, will not be disturbed.

"Credibility determinations are the second step in a two-step process prescribed by the regulations for evaluating a claimant's request for disability benefits based on pain." *Aidinovski v. Apfel*, 27 F. Supp. 2d 1097, 1103 (N.D. Ill. 1998) (citations omitted); *see* 20 C.F.R. §§ 404.1529, 416.929; *Behymer v. Apfel*, 45 F. Supp. 2d 654, 662 (N.D. Ind. 1999); SSR 96-7p. First, the ALJ must determine whether there is an underlying medically determinable physical or mental impairment (that is, an impairment that can be shown by medically acceptable clinical and laboratory diagnostic techniques) that could reasonably be expected to produce the claimant's pain or other symptoms. 20 C.F.R. §§ 404.1529, 416.929; *Williams v. Chater*, 915 F. Supp. 954, 964 (N.D. Ind. 1996); SSR 96-7p. If the record does not allow the ALJ to make such a finding, then that ends the inquiry, for a finding of disability cannot be made solely on the basis of the claimant's symptoms, even if they appear genuine. SSR 96-7p.

If, however, the medical evidence shows the existence of an underlying impairment that could be reasonably expected to produce the claimant's symptoms, the ALJ must evaluate "the intensity, persistence, and functionally limiting effects of the symptoms . . . to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 96-

7p; *see also* 20 C.F.R. §§ 404.1529(c), 416.929; *Herron v. Shalala*, 19 F.3d 329, 334 (7th Cir. 1994); *Williams*, 915 F. Supp. at 964. "This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects." SSR 96-7p. In making this finding, the ALJ must consider various factors in addition to the objective medical evidence, including the claimant's daily living activities; the location, duration, frequency, and intensity of his pain; factors that precipitate or aggravate the symptoms; the type, dosage, effectiveness and side effects of any pain medication; treatment, other than medication, that the claimant receives for pain; any other measures that he uses to relieve pain; and any other factors concerning the claimant's functional limitations and restrictions due to pain. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96-7p.

Because the ALJ is in the best position to evaluate the credibility of a witness, his determination is entitled to special deference. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). If an ALJ's determination is grounded in the record and he articulates his analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988); *see Ottman v. Barnhart*, 306 F. Supp. 2d 829, 838 (N.D. Ind. 2004), creating "an accurate and logical bridge between the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006), his determination will be upheld unless it is "patently wrong." *Powers*, 207 F.3d at 435; *see also Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (remanding an ALJ's credibility determination because the ALJ's decision was based on "serious errors in reasoning rather than merely the demeanor of the witness . . . .").

Here, the ALJ concluded at step one of his credibility analysis that Stolte had an underlying medically determinable physical impairment that could reasonably be expected to

produce his pain or other symptoms. (Tr. 20.) At step two, however, the ALJ determined that Stolte's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . [RFC] assessment." (Tr. 20.)

It is at this second step where Stolte focuses his challenge to the ALJ's reasoning, contending that the ALJ failed to properly analyze the factors set forth in 20 C.F.R. §§ 404.1529(c) and 416.929(c). Specifically, Stolte criticizes the ALJ's consideration of his purported failure to report medication side effects to his physicians; his inconsistent work record before his injury and the fact that he worked after his alleged onset date; and the lack of objective evidence to support his subjective complaints. The Court will discuss each of Stolte's criticisms in turn.

To begin, in discounting Stolte's credibility, the ALJ observed: "While the claimant testified to memory deficits, fatigue, dizziness with standing and medication side effects, such complaints are not reflected within the years of medical treatment, and even the most favorable and essentially unsupported opinion of Dr. Klele fails to reference any reports of fatigue, dizziness, memory deficit or even specific medication side effects." (Tr. 20.) Stolte, citing *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009), challenges this observation, asserting that it "is contrary to Seventh Circuit precedent." (Resp. Br. 15.) In this respect, the *Terry* Court stated: "[W]e are skeptical that a claimant's failure to identify side effects undermines [his] credibility–after all, not everyone experiences side effects from a given medication, and some patients may not complain because the benefits of a particular drug outweigh its side effects." *Id*.

Significantly, however, the Court further found in *Terry* that the ALJ had repeatedly mischaracterized the record in that the claimant indeed *had* reported medication side effects to

16

her physicians. *Id.* Here, in contrast, Stolte does not point to any mischaracterization of the record by the ALJ in that respect. Moreover, an ALJ is instructed to "evaluate [a claimant's] statements in relation to the objective medication evidence and other evidence . . . ." 20 C.F.R. §§ 404.1529, 416.929; *see also* SSR 96-7p. In this instance, the ALJ did just that, observing that some of Stolte's subjective complaints at the hearing were not otherwise mentioned in the medical record, reasonably causing the ALJ to infer that they might not be as severe as Stolte claimed. *See Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir. 2006) ("Applicants for disability benefits have an incentive to exaggerate their symptoms, and an [ALJ] is free to discount the applicant's testimony on the basis of the other evidence in the case."); *see, e.g.*, *Shinabarger v. Barnhart*, No. 1:05-cv-0276-DFH-TAB, 2006 WL 3206338, at *14 (S.D. Ind. Mar. 31, 2006) (considering when discounting claimant's credibility that although she took a large variety of medications there was no evidence in the record of significantly limiting side effects from these medications).

Moreover, this is not a case where the ALJ turned a blind eye to a claimant's complaints of debilitating side effects—the ALJ did indeed note Stolte's testimony of side effects. (Tr. 19-20.) Thus, "[i]n essence, [Stolte's] point is that the ALJ should have *accepted* his testimony that his medications cause him" to be unable to work. *Parks v. Astrue*, No. 08-cv-749-JPG, 2010 WL 583907, at *7-8 (S.D. Ill. Feb. 17, 2010) (emphasis added). "He is incorrect. The ALJ does not have to credit the plaintiff's testimony." *Id.* (citing *Johnson*, 449 F.3d at 805).

Next, Stolte challenges the ALJ's observation of the fact that he had worked at the substantial gainful activity level in only four of the fifteen years prior to his alleged onset date, and that he continued to work part-time for a period of months after his alleged onset date.

(Opening Br. 16.) He argues that "a claimant's economic condition should not guide an ALJ's credibility determination—such a practice would create an unfair presumption against indigent claimants," *Halbrook v. Chater*, 925 F. Supp. 563, 575 (N.D. Ill. Apr. 26, 1995), and that "employment is not proof positive of ability to work, since disabled people, if desperate (or employed by an altruist), can often hold a job," *Wilder v. Apfel*, 153 F.3d 799, 801 (7th Cir. 1998).

Stolte's challenge to the ALJ's reasoning is unpersuasive. It is proper for an ALJ to consider a claimant's daily activities as a factor when assessing the credibility of a claimant's complaints, as well as any inconsistency in a claimant's statements or activities. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96-7p; *Schmidt*, 395 F.3d at 746-47; *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004). A claimant's ability to perform part-time work has been found to be inconsistent with subjective complaints of pain, *see Steward v. Bowen*, 858 F.2d 1295, 1302 (7th Cir. 1988), and here, the ALJ did not go so far as to improperly equate Stolte's performance of such part-time work with an ability to work full-time. It was in this context that the ALJ noted that Stolte's work performance even before his car accident appeared to be, for the most part, less than full-time. In any event, Stolte's work history was not the only reason the ALJ cited for his conclusion that Stolte's testimony was not entirely credible. *See, e.g.*, *Martz v. Astrue*, No. 1:07-cv-00219, 2008 WL 975051, at *5-6 (N.D. Ind. Apr. 8, 2008) (affirming the ALJ's credibility determination where the ALJ considered the fact that plaintiff worked part-time after her alleged onset date as just one factor in the credibility analysis).

Next, Stolte contends that the ALJ selectively reviewed the evidence when discounting his credibility based on the report of the physical therapist, who opined that his "pain rating

response . . . was out of proportion with his capacity to function", that "some movement and strength patterns were inconsistent with his ability to perform these activities when focused to do so," and that "objective examination findings were essentially unremarkable." (Tr. 21.) Stolte asserts that the ALJ ignored an observation Dr. Wilcox made when administering a nerve block that Stolte exhibited no inappropriate pain behavior, and a representation by Dr. Klele that he was not a malingerer. (Opening Br. 17.)

In that regard, an ALJ "need not provide a written evaluation of every piece of evidence that is presented." *Scheck*, 357 F.3d at 700 (citation omitted). Rather, the ALJ must only "minimally articulate his . . . justification for rejecting or accepting specific evidence of disability." *Id*. (citation omitted); *see also Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (emphasizing that an ALJ need not evaluate every piece of evidence in writing, but must sufficiently articulate the ALJ's assessment of the evidence to assure that the important evidence has been considered and that the ALJ's path of reasoning can be traced); *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996) (same); *see generally Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985) ("If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough."). Furthermore, for the reasons stated *infra*, the ALJ's discounting of Dr. Klele's opinion is supported by substantial evidence, and the omission of Dr. Wilcox's statement, made in the context of administering a nerve block rather than when assessing Stolte's ability to function, simply does not rise to the level of a "line of evidence" that the ALJ inappropriately ignored. *See, e.g., Zamora v. Massanari*, No. 99 C 371, 2001 WL 766374, at *6, 13-14 (N.D. Ill. July 6, 2001).

Finally, Stolte criticizes the ALJ for discounting his subjective symptoms because they lack the support of objective medical evidence. In that regard, the ALJ considered that the FCE results and Stolte's treating orthopaedists' findings were inconsistent with Stolte's complaints of disabling neck pain. (Tr. 21-22.) Stolte, however, contends that the ALJ erred in discounting his credibility on this basis, because one of his doctors suggested he undergo a discogram but he could not afford to do so. Of course, this argument is a non-starter. An ALJ is entitled to consider the objective medical evidence, or lack thereof, as a factor in assessing credibility. *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); SSR 96-7p; *Smith v. Apfel*, 231 F.3d 433, 439 (7th Cir. 2000) ("[A]n ALJ may consider the lack of medical evidence as probative of the claimant's credibility."). Furthermore, here the ALJ expressly considered the fact that Stolte could not afford to undergo the discogram, and thus he did not ignore the impact of Stolte's financial constraints in his analysis. (Tr. 20.)

In sum, the ALJ in this case performed a thorough evaluation of Stolte's credibility in accordance with the factors identified in 20 C.F.R. §§ 404.1529(c) and 416.929(c), and determined that the objective and other evidence did not support the alleged severity of his impairments. In doing so, the ALJ adequately built an accurate and logical bridge between the evidence and his conclusion that Stolte's testimony of debilitating limitations was not entirely credible, and his determination is not "patently wrong." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000); *Powers*, 207 F.3d at 435. Therefore, the ALJ's credibility determination, which is entitled to special deference, *Powers*, 207 F.3d at 435, will not be disturbed.

D. *The ALJ's Consideration of Dr. Klele's Opinion Is Supported by Substantial Evidence*

Stolte next contends that the ALJ improperly considered the opinion of Dr. Klele, a

family practitioner, who opined that he could work only part-time. Stolte's second argument also fails to warrant a remand of the Commissioner's final decision.

The Seventh Circuit Court of Appeals has stated that "more weight is generally given to the opinion of a treating physician because of his greater familiarity with the claimant's conditions and circumstances." *Clifford*, 227 F.3d at 870; *see also* 20 C.F.R. § 404.1527(d)(2). However, this principle is not absolute, as "a treating physician's opinion regarding the nature and severity of a medical condition is [only] entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Clifford*, 227 F.3d at 870; *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002).

In the event the treating physician's opinion is not well supported or is inconsistent with other substantial evidence, the Commissioner must apply the following factors to determine the proper weight to give the opinion: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) how much supporting evidence is provided; (4) the consistency between the opinion and the record as a whole; (5) whether the treating physician is a specialist; and (6) any other factors brought to the attention of the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.929(d); *see also Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996).

Furthermore, contrary to many eager claimants' arguments, a claimant is not entitled to DIB simply because his treating physician states that he is "unable to work" or "disabled," *Clifford*, 227 F.3d at 870; the determination of disability is reserved to the Commissioner, *id.*; *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995); *see also* 20 C.F.R. §§ 404.1527(e)(1),

416.927(e)(1). Regardless of the outcome, the Commissioner must always give good reasons for the weight ultimately applied to the treating source's opinion. *Clifford*, 227 F.3d at 870; *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Here, the ALJ thoroughly discussed Dr. Klele's opinion in significant detail, penning no less than two pages on the matter. (Tr. 24-25.) Ultimately, however, he chose to assign "little weight" to it. (Tr. 24.) In doing so, the ALJ found that (1) Dr. Klele had not reasonably established a treating relationship with Stolte; (2) Dr. Klele's opinion of Stolte's symptoms and disability was not supported by the objective findings of multiple specialists during the previous three years, and thus appeared to be based on Stolte's subjective symptoms; (3) Dr. Klele's opinion that Stolte would need to take unscheduled breaks until he could afford nerve blocks suggests that Dr. Klele was unaware of Stolte's extensive history with nerve blocks that yielded unsustainable results; and (4) Dr. Klele's opinion that Stolte had situational depression was not voiced by any other medical provider, he never referred Stolte to a mental health specialist; and his statement that Stolte could not afford antidepressants appeared inconsistent with Stolte's seemingly uninhibited access to other medications. (Tr. 24.)

Nevertheless, Stolte nitpicks the ALJ's detailed evaluation of Dr. Klele's opinion. First, he argues that the ALJ erred when he concluded that Dr. Klele had not established a treating relationship with Stolte because he only seen him for four months. Any purported error in this regard, however, is ultimately harmless, because Dr. Klele's opinion is inconsistent with other evidence of record. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (concluding that an error is harmless when it "would not affect the outcome of the case"). Therefore, Dr. Klele's opinion is not entitled to controlling weight and must be weighed in accordance with the factors

set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) like any non-treating physician's opinion. Here, the ALJ did just that, as he expressly considered that Stolte saw Dr. Klele eight times in four months; that his opinion lacked the support of objective evidence; and that the opinion was inconsistent with the record as a whole.

Next, Stolte argues that the ALJ erred because he did not recontact Dr. Klele to request his treatment records, which were not submitted to the record. However, "[a]n ALJ need recontact medical sources only when the evidence received is inadequate to determine whether the claimant is disabled." *Skarbek*, 390 F.3d at 504 (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)); *see also Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994) ("The [ALJ] will try to obtain additional evidence if the evidence before [him] is insufficient to determine whether a claimant is disabled or, if after weighing the conflicting evidence, [he] cannot reach a conclusion."). Here, the evidence before the ALJ was adequate for the ALJ to find that Stolte was not disabled. *See id*. Furthermore, the ALJ probed Stolte at the hearing about Dr. Klele's family practice background, the frequency and duration of their visits, and the type of treatment that Dr. Klele provided to him. *See Luna*, 22 F.3d at 693 (rejecting claimant's argument that the ALJ erred by not recontacting his physician where the ALJ had thoroughly questioned the claimant at the hearing about the relevant issues).

In addition, the ALJ discounted Dr. Klele's opinion because he was ostensibly unaware of Stolte's extensive and prolonged treatment history. The ALJ made this inference based on Dr. Klele's statement that Stolte would need numerous unscheduled breaks per day until he could afford nerve blocks, which suggested that Dr. Klele was unaware that Stolte had not obtained sustainable or consistent results from prior nerve blocks. Stolte argues, however, that he told the

ALJ at the hearing that he had sent his previous medical records to Dr. Klele (Tr. 474), and thus that the ALJ erred in making this inference. The inference, however, is not unreasonable as even if Stolte sent the reports, there is no indication that Dr. Klele actually read and considered them, as Dr. Wilcox had expressly advised Stolte *against* receiving additional nerve blocks for risk of flaring his symptoms even more. (Tr. 319-20); *see Stevenson v. Chater*, 105 F.3d 1151, 1155 (7th Cir. 1997) ("The ALJ [is] entitled to make reasonable inferences from the evidence before him . . . ."). In any event, Stolte's attempt to "nitpick" the ALJ's reasoning, *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) (explaining that when reviewing the ALJ's decision, the court will "give the opinion a commonsensical reading rather than nitpicking at it"), amounts to no more than a plea to this Court to reweigh the evidence—a task which it cannot do. *See Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000) (emphasizing that the court is not allowed to substitute its judgment for the ALJ by "reweighing evidence"); *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000) ("[W]e cannot reweigh the evidence or substitute our own judgment for that of the ALJ.").

Finally, the ALJ discounted Dr. Klele's opinion because no other medical source of record noted that Stolte was depressed, Stolte did not complain to other medical sources of feeling depressed, and Dr. Klele never referred him to a mental health specialist. Stolte argues that the ALJ inappropriately discounted Dr. Klele's opinion on this point, suggesting that his depression may recently have manifested itself, it is not unusual for individuals to fail to report mental health problems, and he could not afford a mental health specialist. Contrary to Stolte's assertion, however, an ALJ is indeed entitled to discount a medical source opinion when it is inconsistent with the other evidence of record. *See* 20 C.F.R. §§ 404.1527(d), 426.927(d)

("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."); *Books*, 91 F.3d at 979 (stating that an ALJ must consider a variety of factors, including the consistency of the evidence, when assessing conflicting medical opinion evidence).

In sum, Stolte has failed to show that a remand is warranted based on the ALJ's consideration of Dr. Klele's opinion. This Court simply cannot accept his plea to reweigh the evidence in the hope that it will come out in his favor this time. *Canon*, 213 F.3d at 974.

### E. The ALJ's Step 5 Finding that Stolte Could Perform Other Work Is Supported by Substantial Evidence

Finally, Stolte contends that the ALJ's Step 5 finding is not supported by substantial evidence. As with his prior two arguments, Stolte's final assertion is unavailing.

At the hearing, the VE testified that there were at least three unskilled, sedentary occupations that a hypothetical individual with Stolte's RFC could perform: telephone clerk, surveillance system monitor, and order clerk. The ALJ then asked the VE whether his testimony was consistent with the Dictionary of Occupational Titles ("DOT"), and the VE responded affirmatively. (Tr. 489.) The ALJ then asked Stolte's counsel whether he had any questions for the VE, and counsel responded: "No questions, Your Honor." (Tr. 489.)

Now, Stotle suggests that the ALJ's step 5 finding is not supported by substantial evidence because a purported conflict exists between the jobs identified by the VE and the descriptions of such jobs in the DOT. In advancing this argument, however, Stolte relies on mere conclusory assertions, contending that "[i]t is obvious that most occupations especially of an unskilled nature would require more than occasional reaching especially those requiring answering or calling over the telephone and taking orders." (Opening Br. 22.) He also argues

that "[a]lthough the surveillance system monitor occupation does not require any reaching at all, in the post 9/11 era any governmental job requiring surveillance would be of a semi-skilled or skilled nature requiring significant training and licensing." (Opening Br. 22.)

Stolte concedes, however, that his counsel failed to identify any conflict at the hearing. (Tr. 489.) Nonetheless, he suggests that the purported conflicts "still may be error if they were obvious enough that the ALJ should have picked them up without any assistance." (Opening Br. 22); *see Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) ("[T]he failure of . . . counsel to identify the conflicts at the time of the hearing is not without consequence. [The claimant] now has to argue that the conflicts were obvious enough that the ALJ should have picked up on them without any assistance, for SSR 00-4p requires only that the ALJ investigate and resolve *apparent* conflicts between the VE's evidence and the DOT.").

Stolte's argument is without merit, as his conclusory assertions are insufficient to overcome the uncontested testimony of the VE at the hearing. There was no "obvious" or "apparent" conflict between the DOT and the VE's testimony at the time of the hearing, and thus the ALJ fully complied with the requirements of Social Security Ruling 00-4p. *See, e.g.*, *Eaken v. Astrue*, No. 09 CV 2823, 2010 WL 2858716, at *12-13 (N.D. Ill. July 15, 2010) (finding no obvious or apparent conflict); *Huerta v. Astrue*, No. 2:09-CV-001-PRC, 2009 WL 4042883, at *21 (N.D. Ind. Nov. 19, 2009) (same); *Hudson v. Soc. Sec. Admin.*, No. 3:07-CV-117 CAN, 2008 WL 474207, at *9 (N.D. Ind. Feb. 19, 2008) (same).

Consequently, Stolte's final argument fails to warrant a remand of the Commissioner's decision, and thus the decision will be affirmed.

## VI. CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is AFFIRMED. The Clerk is directed to enter a judgment in favor of the Commissioner and against Stolte.

SO ORDERED.

Enter for this 19th day of November, 2010.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge